UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARAM MATTA ISKANDAR WASEF, | No.  1:26-cv-01078-DAD-JDP (HC) |
| Petitioner, | |
| v. | ORDER CONVERTING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER TO A MOTION FOR PRELIMINARY INJUNCTION AND GRANTING THAT MOTION |
| CHRISTOPHER CHESTNUT, et al., | |
| Respondents. | (Doc. No. 2) |

This matter is before the court on petitioner's motion for temporary restraining order. (Doc. No. 2.)  On February 9, 2026, the court directed respondents to file an opposition to the pending motion no later than February 10, 2026 addressing whether any provision of law or fact in this case would distinguish it from this court's order in *Ayala Cajina v. Wofford*, No. 1:25-cv-01566-DAD-AC (HC), 2025 WL 3251083 (E.D. Cal. Nov. 21, 2025).  (Doc. No. 6.)  On February 9, 2026, respondents filed an opposition to petitioner's pending motion.  (Doc. No. 8.)  For the reasons explained below, the court will grant petitioner's motion.

Respondents concede that there are no legal or material factual difference to distinguish this case from *Ayala Cajina* or other similar cases decided by the court.  (*Id.* at 2.)  Having considered the circumstances of petitioner's current detention and the parties' arguments, the

1

court finds analogous and persuasive the undersigned's previous orders in *Ayala Cajina v. Wofford*, No. 1:25-cv-01566-DAD-AC (HC), 2025 WL 3251083 (E.D. Cal. Nov. 21, 2025), in which the court concluded that due process required a pre-detention hearing to protect the petitioner's liberty interest in their continued release, and *O.A.C.S. v. Wofford*, No. 1:25-cv-01652-DAD-CSK (HC), 2025 WL 3485221 (E.D. Cal. Dec. 4, 2025), in which the court concluded that previously releasing the petitioner on his own recognizance created a reliance interest such that the petitioner was entitled to the due process available under 8 U.S.C. § 1226(a). Here, petitioner has provided evidence in the form of a verified petition for writ of habeas corpus that he arrived in the United States on October 30, 2024, was detained by immigration authorities, and subsequently released on his own recognizance. (Doc. No. 1 at ¶ 1.)

Despite conceding that this case is not distinguishable from those addressed in the court's cited prior orders, respondents argue that the court should deny the motion for temporary restraining order in light of new precedent. (Doc. No. 8 at 2–3.) Specifically, respondents cite to the Fifth Circuit's recent opinion in *Buenrostro-Mendez v. Bondi*, — F.4th —, 2026 WL 323330 (5th Cir. 2026), in which the majority found that 8 U.S.C. § 1225(b)(2)(A) requires mandatory detention for any "alien who is an applicant for admission" and is also "seeking admission" who "is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). That majority opinion concluded that any person who was an "applicant for admission" was necessarily "seeking admission" as well, despite the first phrase being a specific term of art defined by 8 U.S.C. § 1225(a)(1)(A)(i) and the second phrase not being defined by that statute. *Buenrostro-Mendez*, 2026 WL 323330, at *4–5. As the dissent in *Buenrostro-Mendez* observed:

> On the government's reading, the phrase "alien seeking admission does no independent work. But "it is a cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute." *Williams v. Taylor*, 529 U.S. 362, 404 (2000).
>
> Conversely, Petitioners' reading gives "seeking admission" independent force—it refers to noncitizens seeking entry into the United States—and chimes with the statutory definition of "admission" as "lawful entry . . . into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). As the district court in Padron Covarrubias's case recognized, "a variation in terms suggests a variation in meaning." The surplusage canon and statutory definition of "admission

2

reinforce the common-sense understanding: Petitioners were not "seeking admission when they were arrested inside the United States."

The majority, like the government, reasons that "seeking" is like "applying," on an analogy to applying to college and thereby seeking admission. "Applicant for admission," however, is a specifically defined statutory term of art in § 1225(a)(1); "seeking admission" is not. The majority's attempt to read the definition of "applicant for admission" back into the phrase "seeking admission," as if sharing a word necessitates sharing a meaning, is unpersuasive.

*Buenrostro-Mendez*, 2026 WL 323330, at *12–13 (cleaned up). In that dissent, Judge Douglas also noted the implausibility of the majority's statutory construction:

Putting these rules together, it is simply not plausible that the Congress that enacted IIRIRA intended to give the government the authority and mandate to detain all noncitizens unlawfully present in the United States without bond. As Petitioners point out, this would have required the detention [without bond] of millions of people, whereas Congress specifically gave the Attorney General authority to defer the agency's much more modest implementation of § 1226(c)'s new detention mandate, which affected only persons subject to removal based on certain criminal offenses—an estimated 45,000 people in total—out of a recognition that this mandate alone would strain the agency's limited detention capacity. To this, Petitioners add Congress's odd failure to correct, or show any signs of objecting to, the agency's failure to detain the millions of people it purportedly required to be detained. *See Zemel v. Rusk*, 381 U.S. 1, 11 (1965) ("Congress' failure to repeal or revise in the face of such administrative interpretation . . . constitutes persuasive evidence that that interpretation is the one Congress intended."). For its part, the Department of Justice could hardly have been clearer that its contemporaneous understanding of the statute was the same as Petitioners': "Despite being applicants for admission, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination." Detention and Removal of Aliens, 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997)[.]

* * *

No one has ever thought that § 1225(b)(2)(A) means what the government and majority say it means—because it does not mean it. Congress did not secretly require two million noncitizens to be detained without bond, when nothing like this had ever been done before, and the whole history of American immigration law suggested it would not be. We would "expect more than simple statutory silence if, and when, Congress were to intend a major departure." *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 465 (2017). This is to say nothing of this hidden power's enormous "economic and political significance," which is another "reason to hesitate before concluding that Congress meant to confer such authority." *West Virginia v. EPA*, 597 U.S. 697, 721 (2022). . . . This is a quintessential elephant-in-a-mousehole interpretation, and

3

> is all the more suspect because of the inconsistency of the agency's views and its longstanding failure to assert this hidden power.

*Id.* at *15–16 (cleaned up).

The Seventh Circuit, in a thorough and well-reasoned opinion, has also found the interpretation of § 1225 which respondents urge be adopted here to be an unreasonable one. *Castañon-Nava v. U.S. D.H.S.*, 161 F.4th 1048 (7th Cir. 2025). The Seventh Circuit similarly found that respondents' interpretation of § 1225 would render the phrase "seeking admission" superfluous, thereby "violating one of the cardinal rules of statutory construction." *Id.* at 1061. As to the argument that petitioner's interpretation of the statute would provide benefits to a noncitizen residing in the United States that one who was apprehended immediately at a port of entry would not receive, the Seventh Circuit observed:

> Furthermore, the difference in treatment between a noncitizen at the border and one already in the United States fits within the broader context of our immigration law. Indeed "[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality.").

*Id.* at 1061–62 (cleaned up). The court finds the reasoning of the Seventh Circuit in *Castañon-Nava* and of the dissent in *Buenrostro-Mendez* to be entirely persuasive in this regard. Moreover, this conclusion is in accord with the clear weight of authority from other district courts in the Ninth Circuit. *See Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1324–25 (W.D. Wash. 2025); *see also Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases); *Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 937 (N.D. Cal. 2025); *Pablo Sequen v. Albarran*, — F. Supp. 3d —, 2025 WL 2935630, at *8–10 (N.D. Cal. 2025); *Maldonado Vazquez v. Feeley*, — F. Supp. 3d —, 2025 WL 2676082, at *12–16 (D. Nev. 2025); *Rosado v. Figueroa*, No. 25-cv-02157-PHX-DLR-CDB, 2025 WL 2337099, at *7–10 (D. Ariz. Aug. 11, 2025), *report and*

/////

/////

4

*recommendation adopted by*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025).  Accordingly, the undersigned rejects respondents' argument.[1]

Respondents also argue that the court should find that it is not bound by the final judgment entered as to the certified class in *Bautista v. Santacruz*, — F. Supp. 3d —, 2025 WL 3713987 (C.D. Cal. 2025) because that court lacked jurisdiction to enter habeas relief outside the Central District of California.  The court does not decide this motion on the basis of the *Bautista* order but also notes that respondents' argument in this regard misses the mark in any event because the district court in *Bautista* explicitly did not provide class-wide habeas relief.  *Bautista*, 2025 WL 3713987, at *14–15.

Therefore, the court adopts its prior reasoning set forth in its decisions in *Ayala Cajina* and *O.A.C.S.* and incorporates it herein.  In their opposition, respondents state that they do not oppose conversion of the pending motion for temporary restraining order to a motion for preliminary injunction.  Accordingly, the court orders as follows:

1.      Petitioner's motion for temporary restraining order (Doc. No. 2) is CONVERTED to a motion for preliminary injunction and GRANTED as follows:

    a.      Respondents are ORDERED to immediately release petitioner from respondents' custody on the same conditions that governed his release immediately prior to his re-detention on December 27, 2025;

    b.      Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner for any purpose, absent exigent circumstances, without providing petitioner written notice and a pre-detention hearing before a neutral adjudicator;

2.      Petitioner is not required to post bond pursuant to Rule 65(c) of the Federal Rules of Civil Procedure; and

---

[1]  Moreover, the court instructed respondents in their opposition to distinguish its prior decisions in which constitutional due process protections for similarly situated petitioners were considered, not to address the question of whether a statutory framework provided petitioner a bond hearing or mandated detention in contravention of due process.  Accordingly, even if found to be persuasive, the majority opinion in *Buenrostro-Mendez* would have no applicability to the arguments advanced in this action.

3.    This action is REFERRED to the assigned magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated:    **February 11, 2026**

_____
DALE A. DROZD
UNITED STATES DISTRICT JUDGE

6